UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>)<br>)<br>DEAN TRAN )<br>)<br>) | 1:24-cr-10178-FDS |

## DEAN TRAN'S SENTENCING MEMORANDUM

Dean Tran, through counsel, respectfully submits this Sentencing Memorandum requesting this Court sentence him to six months of incarceration, adjusted to run concurrently with the undischarged sentence he is presently serving in the related case,[1] under U.S.S.G. §5G1.3(b) (Sentencing guideline allowing District Court to adjust the sentence for any period of imprisonment already served for related conduct and run that sentence concurrently where there is an undischarged term of imprisonment at time of sentencing).

The reasons for this request, more fully articulated below, are, in short, that this case is closely intertwined with the case for which Mr. Tran is currently serving time and should have been resolved (as Mr. Tran wanted) after his conviction in the related case. A concurrent sentence adjusted under U.S.S.G. §5G1.3(b) is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553.

---

[1] Docket No. 23-10299-FDS. Hereinafter referred to as the "related case."

I.      **Objections to PSR**

The parties agreed to a single disclosure PSR. Mr. Tran provides his objections here for the Court's review.

**Objection to PSR § 29**

Mr. Tran objects insofar as this section omits that Mr. Tran experienced a medical emergency when the agents first approached him to interview him on June 22, 2023. Mr. Tran passed out, and the agents had to summons an ambulance. It was only after he received medical attention that Mr. Tran waived his *Miranda* rights and agreed to speak to agents.

**Objection to PSR § 30**

Mr. Tran objects to this section insofar as it differs from the facts the government recited and Mr. Tran agreed to at the plea hearing held on December 19, 2025. Those facts were as follows:

> The defendant made material misrepresentations to the federal law enforcement agents about the letter, including, first, that his sister and co-defendant, Tuyet Martin, had authored the letter, when she was not the sole author of the letter, and the defendant had revised it before it was finalized and submitted to unemployment officials; and second, that the sister's signature appeared on the letter, when, in fact, the defendant had signed the letter and not the sister.

(Doc. 137 at 13-14).

II.     <u>Sentencing Argument</u>

    **A.  The Related Case and this Indictment are Intricately Intertwined**

Having presided over the trial, this Court is surely well-acquainted with the related case. As that case was pending, the government separately indicted Mr. Tran for these related offenses. As the Court is also aware, the evidence underlying this indictment was presented at the trial in the related case. This included testimony from Agent Rosen relating to her interview of Mr. Tran on June 22, 2023. The statements Mr. Tran made during that interview are the subject of the charges in this indictment. (Doc. 101; *See also* Docket 23-10299, Docs. 115-116).

Mr. Tran was convicted in the related case on September 11, 2024, and was sentenced on February 7, 2025. (*See* Docket No. 23-10299, Doc. 119; PSR § 7). He self-surrendered on March 21, 2025, and has been serving that sentence at FMC-Devens. (PSR §§ 3, 5).

    **B.  Mr. Tran has Desired to Resolve this Matter and Take Responsibility for his Conduct for Nearly Ten Months.**

Upon his conviction in the related case, Mr. Tran sought to resolve this matter, and would have, as he does now, sought a concurrent sentence.[2] Mr. Tran's intention, however, was repeatedly thwarted through no fault of his own. He now asks the Court to consider the circumstances causing the delay in his ability to take responsibility for his conduct in this case and consider the punishment already administered sufficient for his conduct here.

---

[2] Mr. Tran was convicted of twenty-three counts (20 counts of wire fraud and three counts of filing a false tax return) in the related case. This Court sentenced Mr. Tran to eighteen months on each count to be served concurrently. (Doc. 154).

3

Mr. Tran began serving his sentence on the related case on March 21, 2025. (PSR § 3). By May 22, 2025, he was requesting new counsel be appointed in this matter. (Doc. 75). As the Court is aware, his prior counsel represented both Mr. Tran and his co-defendant, Ms. Martin. Despite the Court's efforts to ensure that there was no conflict, a conflict predictably arose, and prior counsel sought to withdraw on June 14, 2025.[3] The day before prior counsel sought to withdraw, he had notified the Court that he had reached a plea agreement with the government at Mr. Tran's behest. (Doc. 91, requesting a Rule 11 hearing for Mr. Tran).

He was permitted to withdraw on July 1, 2025, and Mr. Tran was appointed new counsel on July 2, but she had to withdraw soon thereafter, and undersigned counsel was appointed on August 11, 2025. (Doc. 107). Although Mr. Tran wished to immediately resolve the case so that he could ask for concurrent time, undersigned counsel had to become acquainted with the case, as well as the related case, in order to ensure Mr. Tran received effective assistance of counsel.

All of this is to say, through no fault of his own, Mr. Tran has faced delay and roadblocks in his attempt to resolve this matter. Had he been able to resolve this matter soon after his conviction in the related case, he would have been in a much better position to ask for concurrent time. Moreover, Mr. Tran was advised, inexplicably, to resolve a state case prior to resolving this case, resulting in a 2-point Criminal History Category. (PSR §§ 57, 60).

---

[3] See Doc. 91, requesting a Rule 11 hearing for Mr. Tran. In the motion to withdraw, prior counsel indicated that although Mr. Tran wished to resolve his case by way of a plea, his co-defendant did not wish to do so, which he believed created a conflict.

4

### C. The Requested Sentence is Sufficient, but Not Greater than Necessary, to Comply with the Purposes of Sentencing.

#### 1. Section 5G1.3(b) of the Sentencing Guidelines

Section 5G1.3(b) of the Sentencing Guidelines permits this Court to sentence Mr. Tran to adjusted concurrent time by taking into account the period of imprisonment already served for the related case. "U.S.S.G. § 5G1.3 generally allows district courts to give credit for time served on an undischarged sentence, provided the sentence arose out of relevant conduct." *United States v. Arce-Ayala*, 91 F.4th 28, 34 (1st Cir. 2024), citing *United States v. Moore*, 918 F.3d 368, 371 (4th Cir. 2019) (noting that U.S.S.G. § 5G1.3 is backed by an enabling statute: 18 U.S.C. § 3584(a), which provides that "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively[.]").

Mr. Tran submits that this is a fair disposition. This section of the guidelines contemplates the very scenario Mr. Tran is in here. And this a sentence is, for the reasons outlined below, sufficient to meet the goals of sentencing.

#### 2. Mr. Tran's Traumatic Childhood.

While the Court likely recalls Mr. Tran's background, it is necessary in contemplating a just sentence to recall the trauma of his childhood and what he has accomplished.

Mr. Tran spent his early years in hiding and then as a refugee before being resettled in the United States. (PSR § 67). The end of the Vietnam War in 1975 "started a large and long refugee crisis; those who were left in the country faced torture and re-education, while those escaping the country faced various dangers including death, not being welcomed or recognized as refugees by most regional countries, and having to wait

5

for months or even years in refugee camps before being screened for resettlement."[4] In Mr. Tran's case, his family escaped Vietnam in a small boat when he was three years old. (PSR § 67).[5] The journey was perilous—the small boats travelled over open seas for days—and was marked by fear, exposure, and food and water deprivation. Mr. Tran witnessed the death of other passengers. (PSR § 67). His description of his experience is not an exaggeration. The United Nations Human Rights Commission describes the plight of the Vietnamese who fled by boat as one where "the human cost was immense[]" and notes that it was "estimated that around 10 per cent of the boat people were lost at sea, fell victims to pirate attacks, drowned, or died of dehydration."[6] Other research puts the death toll much higher. "According to most reports, almost half the boat people perished at sea. The remaining half ended up in camps in Thailand, Indonesia, Malaysia, Singapore, the Philippines, Hong Kong, and other countries in Southeast Asia."[7]

Mr. Tran ended up in a refugee camp in Thailand. He and his family lived in the camp for approximately a year. (PSR §§ 68-69). Conditions were grim, and Mr. Tran recalls being hungry, sharing outdoor bathrooms, and having to sleep on the ground. (PSR § 68). He remembers "the smells and sounds from the trip and refugee camp,

---

[4] Vu UTM, Farias ST, Hinton L, Park VT, Tiet QQ, Whitmer RA, Heuer S, Nguyen BS, Meyer OL, "War Trauma and Strength: A Qualitative Study of Participants in the Vietnamese Insights into Cognitive Aging Program," J Gerontol B Psychol Sci Soc Sci. 2025 Apr 7; 80(5), https://pmc.ncbi.nlm.nih.gov/articles/PMC11974392/#CIT0033 (last visited January 27, 2026).

[5] After 1975, thousands of refugees fled Vietnam by boat. The phrase "boat people" came into common usage as a result of the flood of refugees who fled Vietnam in overcrowded, leaky boats. Min Zhou and Carl L. Bankston III, *Straddling Two Social Worlds: The Experience of Vietnamese Refugee Children in the United State*s, at 5, https://www.learningforjustice.org/sites/default/files/kits/vac_brief_history.pdf (last visited January 27, 2026).

[6] *The State of The World's Refugees 2000: Fifty Years of Humanitarian Action - Chapter 4: Flight from Indochina*, at 86 (Jan. 2000), https://www.unhcr.org/africa/media/state-worlds-refugees-2000-fifty-years-humanitarian-action-chapter-4-flight-indochina (last visited January 27, 2026).

[7] Zhou and Bankston III, *Straddling Two Social Worlds,* at 5.

stating that 'you can never forget the smell of ocean water or a septic tank truck driving by.'" (PSR § 68).

His family was fortunate to be sponsored to come to the United States, and they settled in Massachusetts. (PSR § 69). His brother Sebastien describes how "[w]e went through hell and back to get here." *Ex. 1, Letter from Sebastien Tran*.

### 3. Mr. Tran's Resilience and Success

There is also literature suggesting that childhood exposure to trauma can be associated with positive outcomes, such as higher resilience.[8] That is reflected in Mr. Tran's background as well. After coming to the United States, he grew up with a loving family and attended college. (PSR §§ 71-72, 89).

He was a popular City Councilor in Fitchburg and successfully ran and was elected a State Senator. (PSR §§ 95, 97). Many of his constituents continue to support him and appreciate his commitment to his community. *Ex. 2, Letter from Brian Lawrence; Ex. 3, Letter from Catherine Clark*; *Ex. 4, Letter from David Gordon*; *Ex. 5, Letter from Mary Lotze*; *Ex. 6, Letter from Jean Russell*.

### 4. Mr. Tran's Strong Family Support

Mr. Tran has strong family support that will help ensure that this is the end of his involvement in the criminal justice system. He and his wife have been together for twenty-nine years and have four children. *See Ex. 7, Letter from Olivia Tran*. The family is very close. *Ex. 8, Letter from Mylinda Johnston*; *Ex. 9, Letter from Yvonne Johnston*; *Ex. 4, Letter from David Gordon*; *Ex. 10, Letter from Steve Cardillo*. In addition, he has

---

[8] Vu, *et al.*, "War Trauma and Strength," J Gerontol B Psychol Sci Soc Sci. 2025 Apr 7; 80(5), https://pmc.ncbi.nlm.nih.gov/articles/PMC11974392/#CIT0033 (last visited January 27, 2026).

7

the support of his extended family, including his siblings and his in-laws. *Ex. 1, Letter from Sebastien Tran; Ex. 8, Letter from Mylinda Johnston; Ex. 9, Letter from Yvonne Johnson*. His sister, Mai Tran, writes, "With our parents gone, his presence means more than ever-not only to his wife and children, but to his siblings who depend on one another for strength, support, and healing." *Ex. 11, Letter from Mai Tran*. His mother-in-law describes him as "a wonderful part of our family. A son I didn't give birth to." *Ex. 9, Letter from Yvonne Johnson*.

Despite his shortfalls, his dedication to his most important job—being a father—is steadfast. His wife describes how all of his children are all honors students. *Ex. 12, Letter from Kerry Tran*. His brother notes: "In one aspect of his life that he truly has success, is his family. He and his wife, Kerry, have raised four incredible children." *Ex. 1, Letter from Sebastien Tran*. His sister-in-law attests that "he has always been and is an involved, supportive and loving father." *Ex. 8, Letter from Mylinda Johnston*. His daughter describes how her father raised her "to be selfless, courteous, hardworking, and compassionate." *Ex. 7, Letter from Olivia Tran*. Mr. Cardillo observes that Mr. Tran

> has always been deeply involved in [his children's] lives, not only as a provider, but as a present, loving, and positive guiding force. He is the father who always shows up, who listens, who teaches by example, and who places his children's well-being above all else. His children are well-mannered, very respectful, and extremely grounded, and that is a direct reflection of the example he has set for them every day of their lives."

*Ex. 10, Letter from Steve Cardillo*.

There is no doubt Mr. Tran is a loved, and loving, father and husband.

### 5. The Impact of the Sentence on Mr. Tran and His Family

It has been an excruciating long ten months for Mr. Tran and his family. Upon arrival at FMC-Devens, he spent eight weeks in Special Housing Unit (SHU), which is

8

essentially solitary confinement (apparently while the administration arranged for his placement in a regular unit). Going to prison for the first time, nevermind landing in solitary confinement, has been a deeply traumatic experience for Mr. Tran. With limited contact with his family and being alone for endless hours daily—for weeks—Mr. Tran suffered greatly. (See Doc. 77). Mr. Tran's wife describes those difficult weeks:

> Although we feel fortunate to have the ability to see Dean, when he spent the first two months in SHU, or special housing unit, it was scary… The balance of knowing how someone is doing was completely taken from us…Once he was able to convey with us the ability to visit with him for a two hour window only on Thursdays, we spent time away from work, school and life to be near him. We sat waiting to be let in, to sit for about an hour once checked in, to witness him waiting, barely able to stand up straight due to bring chained from hands to waist to feet. He could not reach out to hug his children, even when they tried to fiercely hug him. We cried.

*Ex. 12, Letter from Kerry Tran.*

Mr. Tran was given some relief when he was placed in a regular unit and could enjoy regular contact with his wife and children. Nevertheless, the toll incarceration has taken on him and his family is surely sufficient to meet the goals of sentencing.

His daughter, a recent Northeastern graduate, has found herself, while pursuing a Master's Degree, trying to fill her father's role at home. Instead of complaining, this has caused her to further appreciate her father, who she views as "our handyman, our teacher, our trainer, our provider, and our anchor." *Ex. 7, Letter from Olivia Tran*. The letters from her and her mother illustrate the pain his family has endured while he has been gone.

Family and friends have also witnessed how the sentence Mr. Tran is serving has greatly impacted him and his family. His brother writes:

> Yes, he has made mistakes, and it is easy to paint a picture of someone through their mistakes. I hope you take a moment to consider the WHOLE DEAN TRAN,

> someone who cares deeply for each person that he comes across. Dean loves his family with all of his heart. Being away from them is torture for him. As we get older, TIME is the most important thing, as we can't take back one moment that passes. Time away from our love ones is the ultimate punishment. The time and memories that he has missed with his children cannot be replaced.

*Ex. 1, Letter from Sebastien Tran.*

Likewise, his sister observes:

> Dean has already spent significant time incarcerated, and that time has weighed heavily on him and on all of us who love him. He has reflected deeply, accepted responsibility for his actions, and carries genuine remorse. He understands the consequences of his choices and does not seek to minimize them. While he cannot undo the past, he remains committed to living with integrity, accountability, and purpose moving forward.

*Ex. 11, Letter from Mai Tran.*

Others in his community have also witnessed the effect the sentence has had on Mr. Tran. Mr. Thibault, who visits Mr. Tran monthly, writes:

> During his time in custody, Dean has used this period for reflection and growth. Since August of 2025, I have personally visited Dean at least once per month. Through these consistent visits, I have been able to observe firsthand the effect this experience has had on him. I can see in his eyes and hear in his voice that this time of incarceration has been significant and sobering.

*Ex. 13, Letter from Justin Thibault*. Ms. Lotze also stayed in contact with Mr. Tran while he has been serving his sentence, "discussing faith, prayer, and helping others." *Ex. 5, Letter from Mary Lotze*. Ms. Rudd writes that Mr. Tran's "loss of reputation is a higher price than most of us can fathom. …We in his social circle miss him terribly and know we will never again see the same quiet, dignified Dean we once knew and still care for." *Ex. 14, Letter from Loraine Rudd.*

**Conclusion**

Given the history of this case, the related case, Mr. Tran's background, and the effect his imprisonment has had on him and on his family, Mr. Tran respectfully requests this Court sentence him to six months of incarceration, adjusted to run concurrently with the undischarged sentence he is presently serving in the related case, under U.S.S.G. §5G1.3(b).

**WHEREFORE**, Mr. Tran respectfully requests this Court sentence him to six months of incarceration, adjusted to run concurrently with the undischarged sentence he is presently serving in the related case, under U.S.S.G. §5G1.3(b).

Respectfully submitted,
DEAN TRAN

/s/ Jennifer McKinnon
Jennifer McKinnon
Wiesner McKinnon LLP
88 Broad St., Suite 503
Boston, MA 02110
(617) 303-3940
jmckinnon@jwjmlaw.com

January 28, 2026